## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| MICHAEL MORAN and CAROL MORAN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 07-cv-4077 |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) |

## O P I N I O N and O R D E R

Before the Court is the Motion for Summary Judgment filed by Defendant, United States of America, on June 18, 2009 (Doc. 14). For the reasons set forth below, the Motion is GRANTED.

### BACKGROUND

Plaintiffs seek a refund of tax penalties that they paid to the Internal Revenue Service (IRS) for tax years 1994, 1995, 1996, and 2002. Plaintiffs were penalized for failing to pay income taxes or estimated taxes for those years. (Defendant's Statement of Undisputed Material Facts (hereinafter "UMF") 2 and 3). The total amount of tax penalties assessed and paid for those years is $4,473.27.[1] (UMF 4). Plaintiffs paid this amount on October 22, 2004. (UMF 6). It appears, from documents attached to the Complaint, that at some point, Plaintiffs sought an abatement of the assessed penalties. (Doc. 1-2, pp. 3-6). It also appears that

---

[1] According to Defendant, the parties have stipulated that Plaintiffs are not seeking a refund for tax penalties paid for tax year 1997.

Plaintiffs engaged in an administrative appeals process that ultimately resulted in a May 23, 2006 rejection of their claim that the tax penalties should be abated.[2] (Doc. 1-2, p. 35). Before the IRS, Plaintiffs argued (in a January 19, 2005 letter) that financial hardship, among other things, prevented the timely payment of their income taxes. (Doc. 1-2, pp. 1-2). Plaintiff's filed their Complaint with this Court on November 21, 2007. (Doc. 1).

Plaintiffs have not disputed any of the material facts presented by Defendant nor have Plaintiffs submitted any additional facts to support their claims. See Local Rule 7.1(D)(2)(b)(2) and (b)(4). Thus, Plaintiffs have presented no facts to support their claim that are compliant with the Local Rules.

## DISCUSSION

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant may meet this burden by

---

[2] Defendant provides, in its UMF 8-11, various dates that requests for reconsideration and appeal were made and rejected, the last rejection occurring on April 26, 2006. There are not citations to the record supporting these statements as required by Local Rule 7.1(D)(1)(b). The exact date that the final appeal was rejected does not, however, appear to be material to the issues before the Court. Defendant does not argue that Plaintiffs failed to exhaust administrative remedies.

demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); See also Celotex Corp., 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

There appears to be no dispute that Plaintiffs failed to timely pay their properly assessed taxes for 1994, 1995, 1996 and 2002 and that they were assessed penalties for this failure pursuant to section 6651 of the Internal Revenue Code. 26 U.S.C. § 6651(a)(2). The Code provides, however, that penalties need not be paid if the failure to pay taxes "is due to reasonable cause and not due to willful neglect." Id. "Generally the taxpayer bears the burden of proof when disputing tax liabilities with the IRS." Matter of Carlson, 126 F.3d 915, 921 (7th Cir. 1997) (citing Helvering v. Taylor, 293 U.S. 507, 515 (1935)). In Carlson, the Seventh Circuit noted that "reasonable cause" is not defined by the Internal Revenue Code. Id. 126 F.3d at 921. However, Treasury Regulations do provide guidance:

> [F]ailure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship ... if he paid on the due date. Id. (quoting 26 C.F.R. § 301.6651-1(c)(1)).

The Court of Appeals further explained:

> In considering whether a taxpayer exercised ordinary business care and prudence, a court should consider all facts and circumstances of the taxpayer's situation, including the amount and nature of expenditures in light of income received prior to the date payment was due. A taxpayer exercises ordinary business care and prudence if he makes reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due. "Undue hardship" means more than mere inconvenience. It must be substantial financial hardship, for example, loss due to the sale of property at a sacrifice price. Id. 126 F.3d at 921 (citations and editing marks omitted).

In order for Plaintiffs to prevail on their claims, they must show that there was reasonable cause and that there was no willful neglect for their failure to pay properly assessed taxes. Plaintiffs may meet this burden by coming forth with

4

evidence that they exercised ordinary business care or that they would have suffered an undue hardship had they paid their taxes.  Evidence supporting this claim can include a showing that they diligently put aside monies to pay their taxes or that they suffered a significant business loss.

Plaintiffs' response to the Motion for Summary Judgment appears to confuse the requirements of Rule 56.  The purpose of Rule 56 is to determine if there is a genuine issue of material fact that would necessitate trial: if there are no material facts in dispute, there would be nothing for a fact-finder to determine.  Rule 56(e)(2) places the onus on the nonmoving party to present, by affidavit or otherwise, "specific facts showing a genuine issue for trial" and specifically cautions that a party may not rest on the pleadings.  Anderson, 477 U.S. at 248; Harney v. Speedway SuperAmerica, LLC, 526 F.3d 1099, 1104 (7th Cir. 2008) ("Summary Judgment is the 'put up or shut up; moment in a lawsuit.").  Because they bear the burden of proof at trial, Plaintiffs are required to come forth with admissible evidence that would show that there is a genuine issue of material fact.  The Local Rules further outlines the manner in which relevant facts should be brought to the Court's attention: by properly responding to Defendant's statement of material facts and/or providing additional material facts that are supported by "evidentiary documentation referenced by specific page."  Local Rules 7.1(D)(2)(b)(2) and (b)(4). Plaintiffs have wholly failed to comply with the Local Rules and this Court is not obligated to accept the "facts" presented in their brief.  Petts v. Rockledge Furniture LLC, 534 F.3d 715, 722 (7th Cir. 2008) (noting that a district court may disregard evidence presented in a manner that does not comply with the local rules).

5

Therefore, Plaintiffs have failed to properly present any facts that would support their claim. In light of the burden placed on them by the Internal Revenue Code, Plaintiffs have further failed to meet their burden of proof that the failure to pay their taxes was due to a reasonable cause and not due to willful neglect. In light of this conclusion, summary judgment must be granted in favor of Defendant.

Even if this Court were to consider the "evidence" cited in their brief, Plaintiffs claims would still fail. To meet their burden of proof and show that there is a genuine issue of material fact that they exercised ordinary business care or that they would have suffered an undue hardship had they paid their taxes, Plaintiffs point to their answers to interrogatories (which are provided by Defendant) and the letters they submitted to the IRS during the appeals process (which are attached to the Complaint). As to the letters, Defendant correctly points out that they are inadmissible hearsay. See FED.R.EVID. 801(c). Plaintiffs have presented these out-of-court statements for the truth of the matters asserted therein: that Plaintiffs were in financial dire straits during the relevant time period and that they had significant business losses.[3] There is no showing that any of the hearsay exceptions apply to these statements. Therefore, the letters are not admissible evidence and

---

[3] The first letter, drafted by the Morans and dated January 19, 2005, indicates that Michael Moran owned a landscaping and snow removal business and that Carol Moran owned and operated a daycare in their home. (Doc. 1-2, pp. 1-2). They further state that they struggled to "make ends meet" during the relevant time period, that their businesses struggled, that they attempted to sell Michael Moran's business but that the person to whom they sold absconded with business accounts, and that Michael Moran subsequently was unemployed for 7 months. (Id.) The next letters, drafted by Plaintiffs' attorney and dated April 28, 2005, September 6, 2005, and May 1, 2006, repeats the same statements of hardship (in addition to legal arguments) (Doc. 1,-2, pp. 9-11, 16-19, 34-35) In addition to being hearsay (or double hearsay as the case may be), statements by attorneys are not evidence.

will not be considered by the Court.   Carlisle v. Deere & Co., 576 F.3d 649, 655 (7th Cir. 2009)

Plaintiffs also vaguely refer to their answers to interrogatories.  Answers to interrogatories can be used to defeat a motion for summary judgment.  Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002) ("in granting summary judgment, the court may consider any evidence that would be admissible at trial . . .  The evidence need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content.").  Plaintiffs do not point to any specific portion of the interrogatory answers that support their claims.  The answers are not lengthy and the Court assumes that Plaintiffs would testify congruent with their answers to interrogatory 2.  In that answer, Plaintiffs make a number of statements; below is a recitation of the statements that appear relevant to the standard outlined above:

> Plaintiffs are hardworking people who struggled as business owners throughout the 1990's.  Mr. Moran worked in the landscaping business, installing seed and sod in the summer.  He supplemented his income with snow plowing in the winter.  Both of his income sources were entirely dependent on the weather – if it snowed, he worked, if it rained, he didn't . . . . [H]e saw his profits rise and fall with regularity but did his best to plan for the unexpected financial downslide.  During the years at issue, Mrs. Moran operated a daycare out of their home.  Mrs. Moran's business, while steadier than Mr. Moran's was also sporadic. . . .
> In 1994 the Plaintiffs' income dramatically decreased.  Their financial obligations far outweighed their income.  The taxpayers were able to keep up with many of their necessary living expenses only by failing to withhold sufficient taxes for the 1994, 1995, 1996, and 1997 tax years. . . .  [T]hey had absolutely no way to pay the tax and keep a roof over their heads. . . .  The Plaintiffs were unable to pay their tax liabilities from 1994-1997 as a result of their business related hardship.
> In 2002, Mr. Moran sold his business. . . . However, the Plaintiffs suffered additional financial hardship as a result of theft of

> their business. The purchaser who had promised full payment for assets and customer lists of the business took the assets and fled town, paying the Plaintiffs only $500. . . . Plaintiffs teetered on the brink of bankruptcy.
> The Plaintiffs refinanced their home to pay the IRS in full, and have remained compliant with the IRS since 2002. They were financially unable to pay the tax on time and if they had, extreme financial hardship would have resulted: homelessness and welfare. . . . They simply put food on the table instead of paying tax on time . . . .
> (Def. Ex. 9, p. 2).

From this statement it can be concluded that in 1994 their income decreased such that their obligations outweighed their income. Plaintiffs were nonetheless able to pay their living expenses but were unable to pay their taxes. At some point in 2002, Michael Moran sold (or lost) his business for $500.00. It was not until after 2002 that Plaintiffs refinanced their house in order to remain compliant with the IRS. Plaintiffs offer no further details regarding their income, their assets, and their debts.

Even if this Court were to draw all reasonable inferences in favor of Plaintiffs, this scant evidence does not support Plaintiffs' claims as a matter of law. In United States v. Boyle, 469 U.S. 241 (1985), the Supreme Court had an opportunity to address the phrases "willful neglect" and "reasonable cause" as used in § 6651(a)(1).[4] The Court found that "willful neglect" means "a conscious,

---

[4] Section 6651(a)(1) provides for penalties for the failure to file an income tax return. The subsection applicable to Plaintiffs, § 6651(a)(2), provides for penalties for the failure to pay the amount of tax due. In disputing the applicability of Boyle, Plaintiffs make much of this factual nuance. The taxpayer in Boyle failed to file a timely tax return and the Supreme Court held that reliance on an agent is not "reasonable cause" for failing to file a tax return on time. These are obviously not the facts of this case. The Supreme Court, however, was interpreting the same statute and the same phrases that are at issue in this case. United States v. Cinergy Corp., 458 F.3d 705, 710 (7th Cir. 2006) (noting that there is a presumption that identical words used in different parts of the same statute can have the same

intentional failure or reckless indifference." Id. 469 U.S. at 245-246. There is no argument here that Plaintiffs were willfully neglectful in paying their taxes. "Reasonable cause" is demonstrated if a taxpayer uses "ordinary business care and prudence" but was nonetheless unable to pay on time. Id. at 246. The Supreme Court further held: "To escape the penalty, the taxpayer bears the *heavy burden* of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause.'" Id. at 245 (emphasis added).

Plaintiff has failed to meet their heavy burden. There is no showing that, in order to demonstrate reasonable cause, Plaintiffs used ordinary business care and prudence or that they would have suffered undue hardship. Plaintiffs have failed to present any evidence that they set aside any money, even a penny, during the time period to make sure that their tax liability was covered. There is no showing that even if Plaintiff had set aside such monies, they were nonetheless unable to use that money for taxes and instead had to use the money for living expenses. Indeed there is no evidence that any ordinary business care or prudence was used; the evidence only reasonably shows that Plaintiffs engaged in businesses that were failing. And, this Court only has Plaintiff's statement that he "did his best" to plan for the future. Doing one's best is not equivalent to acting reasonably. There is simply no evidence from which a reasonable finder of fact could conclude that Plaintiffs used ordinary business care or acted reasonably.

---

meaning). Plaintiffs have offered no authority that it is unreasonable to interpret the same phrase in § 6651(a)(1) and § 6651(a)(2) identically. Therefore, the rulings in Boyle interpreting those terms are entitled to deferential weight.

There also is no evidence from which a fact-finder would conclude that Plaintiffs would have suffered undue hardship. In their answer to the interrogatory, Plaintiffs use certain phrases: "financial obligations far outweighed their income;" "no way to pay the tax and keep a roof over their heads," and "maintain a very modest standard of living." Without any benchmarks as to Plaintiffs' financial condition, it is impossible to take these phrases as an indication that Plaintiffs would have suffered *undue* hardship. For example, without an understanding of the nature of the "financial obligations" no fact-finder would be able to determine whether such obligations are reasonable. After all, and just as an example, one may be financially obligated to pay a credit card bill for an unnecessary item like a diamond ring. Without additional information, this Court cannot reasonably infer that the "financial obligations" included necessary items, like the electricity bill. In addition, the "roof" that Plaintiffs refer to may be a six-bedroom mini-mansion and not, perhaps a two bedroom bungalow. And a "modest" standard of living for a person making $60,000 certainly would be different from a similarly "modest" standard of living for a person making $20,000.[5] The point is that without more information, more evidence, Plaintiffs would have this Court speculate as to the level of hardship they would have suffered. Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009) ("The nonmoving party must point to specific facts showing that there is a genuine issue for trial, and inferences relying on mere speculation or conjecture will not suffice."). This scant evidence certainly

---

[5] The Court would add that the mere fact that Plaintiffs incurred tax liability would show that their income was above the poverty level. Thus, Plaintiff would not be able to argue that they would have suffered extreme financial hardship.

10

does not meet the heavy burden outlined by the Supreme Court. Anderson, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

To support their claims, Plaintiffs cite, without much analysis, to a number of district court cases which, while potentially persuasive, are not binding. In In re Arthur's Indus. Maint., Inc., 1992 WL 132563 (Bankr. W.D.Va. 1992), the Bankruptcy Court considered whether a debtor would establish reasonable cause under §§ 6651(a)(1)( and (2) for failing to timely pay his taxes. The Court found for the debtor based on the following: (1) the debtor presented a statement of income and operating costs that showed that expenses exceeded income; (2) the debtor provided evidence that his expenditures were necessary; (3) the debtor provided evidenced that he would not received payment on several construction jobs until they were finished; and, (4) the debtor had to sue in order to collect certain debts and those amounts remained in escrow accounts due to on-going bankruptcy proceedings. The Court concluded that "the debtor establish that its financial circumstances were not ordinary. Importantly, the debtor made significant partial payments during the relevant time periods." Id. at *8. In the case at bar, there is no evidence that the operating costs of Plaintiffs' businesses exceeded their income; there is no evidence that any of Plaintiffs' expenditures were necessary; and, there is no evidence that Plaintiff was unable to easily collect debts that were due and owing to them. Finally, there is absolutely no showing that Plaintiff's made partial

payment or that they even attempted to set aside any amount of money to pay their tax burden. As such, In re Arthur's is inapplicable.

The next case Plaintiff points to is In re Pool & Vargas, Inc., 60 B.R. 722 (Bankr. E.D.Mich.1986). In that case, the Court concluded that the debtor "made a sufficient showing that its financial situation was such hat its business would have been irreparably injured or terminated had it paid or deposited the taxes in full on the due date, in other words, that it would have imposed an undue hardship on the taxpayer. Id. at 728. The following facts led the Court to its conclusion:

> The debtor alleges that it would have suffered an equally severe hardship, i.e., it would have gone out of business, had it filed the returns and paid the taxes when due. Its evidence supported the latter allegation. George Varga, the president of the debtor in possession, testified that the debtor was in the printing business. In the period of 1981-1983, when these liabilities were incurred, the debtor employed four people, including the president, all of whom were essential to the operation of the business. It would not have been possible to lay off any of the employees without terminating the enterprise. Mr. Varga testified that the company needed gross sales of approximately $25,000 per month to break even. However, between 1981 and 1983, the debtor took in considerably less than this amount. For example, for the 12 month period ending on October 31, 1983, the debtor's average receipts were only $15,783 per month. There were several reasons for the decline in the debtor's receipts. The debtor lost its largest account when that customer relocated to the Detroit area; its second largest customer encountered its own financial difficulties, causing a reduction in business for the debtor; and the Flint area, where the debtor was located, was in the midst of a severe recession. Overall, the debtor's sales decreased approximately 50% during this period. Mr. Varga further testified that the IRS was not the only creditor to whom the debtor failed to make timely payments. The debtor eventually defaulted on an obligation to Citizens Bank, on a buy-out agreement with Ronald Pool (formerly a major shareholder of the company), and on an equipment lease with A.B. Dick. The debtor made sporadic payments on these obligations and also made payments to the IRS to the best of its ability. Mr. Varga also stated that the top priority for making payments were those expenses necessary to keep the business running, such as payment of the company's three employees; at the same time, Mr. Varga's salary decreased. There were no available

> assets which the debtor could liquidate without putting itself out of business; all assets which it had on hand were vital to its operations. Finally, Mr. Varga testified that he unsuccessfully attempted to borrow money for the company. In short, the debtor presented a fairly detailed-and grim-depiction of the severe financial difficulties it suffered during this period, which ultimately led to the decision to file for relief under Chapter 11 in 1985. Id. at 725-726.

There is no "fairly detailed" showing, in the case at bar, of the type of extensive financial difficulties that were presented to the Pool & Varga Court. Rather, Plaintiff only offers vague statements about their financial status, without providing the necessary context, and certainly have not shown that they made, or attempted to make, even miniscule payments to the IRS during the relevant time period.

The final case that Plaintiffs' mention is along the same lines as Pool & Varga. In Genwal-Schmidt v. United States, 1978 WL 4527 (D.D.C. 1978), the debtor was unable to pay is taxes because payments were being withheld on a contract that it had with the United States Navy. The Order details the amount that was due, the lengths that the debtor went to in order to secure payment, and the appropriateness of the debtor's actions. Id. at *3-4. Again, in the case at bar, Plaintiffs simply do not present evidence from which a fact-finder could find in their favor.

On a final note, in Plaintiffs' narrative, they state that Michael Moran's business equipment and customer lists were "stolen" for the price of $500.00 in a botched sale in 2002 (which led to the inability to pay taxes that year). Regulations provide that undue hardship can be shown where: "It [] appear[s] that substantial financial loss, for example, loss due to the sale of

property at a sacrifice price, will result to the taxpayer for making payment on the due date . . . ." 26 C.F.R. § 1.6161-1(b).  Because the burden is on Plaintiffs, they must show, at the very least, that the $500.00 represented a "sacrifice price" for the attempted sale of their business.  However, Plaintiffs have not presented any evidence that would place this amount in context.  For example, there is no affidavit from Michael Moran that would state that the equipment and customer lists were worth, lets say, $20,000.  Without such context, how can any fact-finder conclude that $500.00 for Michael Moran's business was or was not a "sacrifice price" that would then excuse the non-payment of taxes?  This is but one example of the deficiencies in the presentment of Plaintiffs' case at the summary judgment stage that can only lead to judgment for Defendant.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant (Doc. 14) is GRANTED.  Plaintiffs have failed to comply with the Local Rules in presenting evidence to support their claims.  Plaintiffs have further pointed to no evidence from which a reasonable fact-finder would conclude that the failure to pay taxes was due to reasonable cause and not due to willful neglect.  The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

CASE TERMINATED

Entered this 25th day of February, 2010

                                                      s/ Joe B. McDade
                                                    JOE BILLY MCDADE
                                                United States District Judge